United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHANIE E.,
Plaintiff,
v.
SSA COMMISSIONER, et al.,
Defendants.

Case No. 25-cv-04880-EKL

**ORDER REVERSING AND REMANDING**

Re: Dkt. No. 13

Plaintiff Stephanie E.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner"), denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 *et seq*. Having considered the parties' briefs, legal authority, and argument held on September 10, 2026, the Court REVERSES and REMANDS for the reasons set forth below.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a 57-year-old African American woman who "was born in French Camp, California and raised all over the Bay Area." Administrative R. at 308-309, 1387, ECF No. 10 ("AR"). Plaintiff was sexually assaulted as a child and as a teenager, *see* AR 799, 1379, 1388, and has been in several abusive relationships, including a 30-year marriage that ended in a divorce in 2021. AR 799, 804. Based in part on these experiences, Plaintiff has received ongoing treatment for depression and anxiety since her twenties. AR 309, 799. Notably, due to her depression and

[1] Because this Order contains potentially sensitive medical information, Plaintiff's name is partially redacted. The Order does not alter the degree of public access to other filings in this action provided by Federal Rule of Civil Procedure 5.2(c) and Civil Local Rule 5-1(c)(5)(B)(i).

anxiety, in April 2010, Plaintiff was found to be disabled from "April 8, 2008 through May 5, 2009." AR 77.

Plaintiff completed the 10th grade and later obtained her GED. AR 308. She worked as a controller at Stanford Health Care from 2009 to 2014, AR 674-678, and then worked several different jobs in the medical field between 2016 and 2018, AR 678-682. Since 2019, Plaintiff attempted to work, including as a caregiver and scheduler, but the record reflects that she was only employed for a few weeks or months at a time. AR 308-309, 465, 681-686. According to Plaintiff, these attempts to perform work failed due to her depression. *See* AR 789. Plaintiff's last work attempts were in 2022, at a health care entity and temporary staffing agency, though the record suggests she worked for only a limited period. *See* AR 685 (indicating that Plaintiff was paid a total of $196.11 and $2,803 for each job, respectively, in 2022); *see also* AR 3353 (noting "unsuccessful work attempts" after the onset date). Plaintiff lives with her adult son. AR 1505.

**B. The ALJ's First Unfavorable Decision**

Plaintiff filed a Title II application for disability insurance benefits on December 4, 2019, alleging that she was disabled since December 1, 2019. AR 167. Her application was denied initially and on reconsideration. AR 107, 112. She appeared for a hearing before an Administrative Law Judge ("ALJ") on May 26, 2021. AR 42. In June 2021, the ALJ issued an unfavorable decision. AR 480. Plaintiff's request for review by the Appeals Council was denied. AR 498. Afterward, Plaintiff sought review of her application in federal court.

The Court reviewed the ALJ's decision and remanded the case for further proceedings, finding that the ALJ committed multiple errors. *Stephanie E. v. O'Malley*, No. 22-cv-06696-RMI, 2024 WL 1244474 (N.D. Cal. Mar. 21, 2024) (Illman, Mag. J.). In relevant part, the Court concluded that the ALJ erred in discounting Plaintiff's subjective testimony by stating "only that Plaintiff's testimony was inconsistent with and unsupported by the medical evidence" because "[s]uch general statements do not meet the 'specific, clear and convincing' standard and are insufficient for the court's review." *Id.* at *4. The Court found that "the ALJ did not cite any evidence that contradicts or is inconsistent with Plaintiff's allegations that her depressive episodes inevitably lead to absence from the workplace." *Id.* And "[t]he ALJ's passing mention of

'essentially moderate symptoms' does not suffice. Given the cyclic nature of Plaintiff's alleged symptoms, it is entirely reasonable that Plaintiff's medical history would contain evidence of mild or moderate symptoms alongside evidence of more severe symptoms." *Id.*

On January 18, 2023, Plaintiff filed an application for Title II and Title XVI disability benefits. The Appeals Council consolidated this application with her initial Title II application, when remanding the case in accordance with Judge Illman's order. AR 519.

### C. The ALJ's Decision on Remand

On remand, a different ALJ held a hearing on February 6, 2025, in which Plaintiff, her representative, and a vocational expert participated. AR 384. On March 7, 2025, the ALJ issued a final decision denying Plaintiff's applications. AR 346.

The ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2026. AR 353; *see also* AR 351 (indicating Plaintiff's date last insured was March 31, 2026). At step one of the sequential evaluation process,[2] the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of December 1, 2019, finding that her work activity in 2020, 2021, and 2022, constituted unsuccessful work attempts. AR 353.

At step two,[3] the ALJ concluded that Plaintiff has the following severe impairments: "major depressive disorder; generalized anxiety disorder; obesity; hyperparathyroidism; hypertension; osteoarthritis of the hips as of July 2023; and chronic kidney disease, stage 3." AR 353 (citation modified). The ALJ found that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities. AR 353. The ALJ determined that Plaintiff's remaining impairments are not severe. AR 353-354.

At step three,[4] the ALJ concluded that Plaintiff does not have an impairment or

[2] In determining whether an individual is disabled under the Act, the ALJ is required to follow a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability. *Id.* § 404.1520(a)(4)(i).

[3] At step two, the ALJ must determine if the claimant has an impairment or combination of impairments that are "severe," meaning that the impairment or impairments "significantly limit[] the claimant's 'physical or mental ability to do basic work activities.'" *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (quoting 20 C.F.R. § 404.1522(a)).

[4] At step three, the ALJ determines whether the claimant has an impairment or combination of

combination of impairments that meets or medically equals the severity of one of the impairments listed in the regulations. AR 354-355. As to her mental health impairments, however, the ALJ found that Plaintiff had moderate limitations in three of the four areas of functioning, referred to as the "paragraph B" criteria. Specifically, the ALJ determined that Plaintiff had moderate limitations with respect to: (1) interacting with others; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing herself. AR 355. Additionally, the ALJ found that Plaintiff had a mild limitation in terms of understanding, remembering, or applying information. AR 355. The ALJ also found that "the evidence fail[ed] to establish the presence of the 'paragraph C' criteria." AR 357 (finding "there is no evidence that the claimant's mental impairment(s) are 'serious and persistent,' that is, that they result in marginal adjustment or a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's life, despite ongoing medical treatment, over a period of 2 years").

At step four,[5] the ALJ found that Plaintiff has the residual functional capacity ("RFC") "to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following limitations: occasional climbing of ladders, ropes or scaffolds; frequent climbing of ramps or stairs, stooping, kneeling, crouching and crawling; can perform simple instructions for extended periods; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; can occasionally work in coordination with or in proximity to others; occasional interaction with the general public and with supervisors; and can deal with occasional changes in the work setting. However, she should not be expected to set goals or make plans independently of others." AR 358. The ALJ determined that Plaintiff has no past relevant work. AR 374.

At step five,[6] the ALJ found that jobs exist in the national economy that Plaintiff can

---

impairments that meets or equals an impairment in the "Listing of Impairments" set forth at 20 C.F.R. pt. 404, subpt. P, app. 1.

[5] At step four, the ALJ assesses the claimant's residual functional capacity, which is the most a claimant can do despite their limitations. The ALJ must determine whether the claimant has the capacity to do their past relevant work. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

[6] At step five, the ALJ must determine whether the claimant can perform "other work" that exists

perform, including cleaner II, hand packager, and packaging machine operator. AR 374-375. Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Act, from the alleged onset date through the date of the decision. AR 375. Plaintiff timely appealed the ALJ's unfavorable decision, and the case was reassigned to this Court.

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Court can affirm, modify, or reverse the agency's decision, with or without remanding the case for a rehearing. *See* 42 U.S.C. § 405(g). The ALJ's decision may be reversed only if it is not supported by substantial evidence or if the ALJ committed a legal error. *Ahearn v. Saul*, 988 F.3d 1111, 1115-1116 (9th Cir. 2021) (citation omitted). Substantial evidence means "more than a mere scintilla but may be less than a preponderance." *Id.* (quoting *Molina v. Astrue*, 674 F.3d 1104, 1110-1111 (9th Cir. 2012), *superseded by regulation on other grounds*). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

When determining whether substantial evidence exists to support the Commissioner's decision, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation modified). If the evidence supports more than one rational interpretation, the court must defer to the Commissioner's decision. *Ahearn*, 988 F.3d at 1115-1116 (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation modified).

---

in "significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). In making this determination, the ALJ may rely on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, or on the testimony of a vocational expert, utilizing the same RFC and limitations set forth in step four.

## III. DISCUSSION

On appeal, Plaintiff argues that the ALJ erred when (1) analyzing two medical opinions when formulating the RFC; (2) discounting Plaintiff's subjective testimony; and (3) determining that Plaintiff did not meet or equal a listing at step three. Pl. Br., ECF No. 13. Based on these errors, Plaintiff argues that the Court should remand for an immediate award of benefits. The Court finds that the ALJ erred when analyzing one of the two medical opinions and by discounting Plaintiff's subjective testimony,[7] and remands the case for a partial award of benefits with further instructions.

### A. Medical Opinions

Plaintiff argues that the ALJ erred in her analysis of Drs. Jacklyn Chandler and Tiadora Kim's medical opinions. Under the applicable regulations, the ALJ is required to evaluate the "persuasiveness" of all medical opinions in the record based on: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c. The first two factors – supportability and consistency – are considered the most important, and the ALJ is required to explicitly address them. *Id.* § 404.1520c(b)(2); *see Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also R.W. v. Comm'r of Soc. Sec.*, No. 25-cv-02302-EMC, 2025 WL 3471251, at *9 (N.D. Cal. Dec. 3, 2025) (explaining that the supportability analysis is "ultimately focused on how a doctor reaches the medical opinion"). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R.

[7] Because these errors require remand, the Court does not address whether the ALJ erred at step three given that the Court's findings as to Dr. Kim's medical opinion and Plaintiff's subjective testimony may impact the step three analysis. *See infra* Section III.C.

United States District Court
Northern District of California

§ 404.1520c(c)(2)). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.*

**1. Dr. Chandler**

The ALJ did not err in analyzing the opinion of Dr. Chandler, who conducted a consultative psychological examination of Plaintiff on May 3, 2020. AR 308-311. The ALJ found Dr. Chandler's opinion was "largely persuasive" and incorporated her workplace limitation findings into the RFC. *See* AR 369, 371-372. Because the ALJ incorporated Dr. Chandler's findings into the RFC, the ALJ did not err. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010).

Plaintiff does not identify any additional restrictions the ALJ should have included in the RFC to account for Dr. Chandler's findings. Rather, Plaintiff argues that the ALJ erred in conducting the supportability and consistency analyses. Pl. Br. at 16. But even if the ALJ erred in conducting these analyses, any such error was harmless because the opinion as to Plaintiff's limitations was incorporated into the RFC. *See, e.g.*, *Halbert T. v. Kijakazi*, No. 21-cv-500-SI, 2022 WL 1538655, at *4 (D. Or. May 16, 2022) ("Even if the ALJ erred in failing [to] address [the doctor's] opinion, any error was harmless because the ALJ incorporated [the doctor's] opinion as to Plaintiff's limitations into Plaintiff's RFC."); *Dylan S. v. Kijakazi*, No. 22-cv-01139-DJA, 2023 WL 5846288, at *6 (D. Nev. Sep. 8, 2023) (finding that, even if ALJ erred by not finding a doctor's opinion more persuasive or in conducting the consistency analysis, "the errors would be harmless because the RFC is consistent with [the doctor's] opined limitations").

**2. Dr. Kim**

Dr. Kim conducted a consultative psychological examination on December 16, 2023. AR 1026-1035. In her medical source statement, Dr. Kim concluded that Plaintiff had moderate limitations in her "[a]bility to sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace" and her "[a]bility to adapt to the typical stressors and pressures common to a competitive work environment." AR 1034. Dr. Kim further explained that Plaintiff "likely requires some assistance and support" to account for her moderate limitations in

concentrating, persisting, and maintaining pace, and in adapting to common stressors and pressures at the workplace. AR 1034. Dr. Kim determined that Plaintiff had no limitations in her "[a]bility to understand, carry out, apply, and remember" instructions or in her "[a]bility to maintain effective interpersonal interaction" with others. AR 1034.

It is undisputed that the ALJ did not "include a limitation for assistance or support" as to Plaintiff's persistence or adaptability in the RFC, Def. Br. at 8, ECF No. 17, despite finding Dr. Kim's report "largely persuasive," AR 373. Thus, the central question is whether the ALJ conducted proper supportability and consistency analyses, when declining to include this limitation in the RFC. The Court addresses both factors in turn, before turning to the Commissioner's argument.

**a. Supportability**

The ALJ erred by not conducting a proper supportability analysis. The ALJ found Dr. Kim's opinion "largely persuasive[,]" and then found that Dr. Kim's "likely" need of assistance finding did not "suggest that the severity of the claimant's mental impairments meet or medically equal the" listings at step three. AR 373. However, the ALJ failed to explain why she did not include this limitation in the RFC at step four. The Court is unable to discern the ALJ's reasoning and may not speculate as to her reasoning. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (explaining that courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"). Accordingly, the ALJ failed to conduct a proper supportability analysis and, as a result, she erred.

**b. Consistency**

The ALJ further erred by failing to conduct a consistency analysis. The ALJ did not consider whether Dr. Kim's finding regarding the likely need for assistance and support was consistent with the medical record. *See* AR 372-373. The ALJ did not address this in the decision, and the Court may not speculate as to the ALJ's rationale or supporting evidence. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine

whether the ALJ's conclusions were supported by substantial evidence."). Consequently, the Court is unable to conduct meaningful judicial review of the consistency analysis and, thus, the ALJ erred. *See, e.g.*, *Robert D. v. Kijakazi*, No. 20CV2132-AJB (MSB), 2021 WL 5905734, at *7 (S.D. Cal. Dec. 14, 2021) ("The ALJ's failure to articulate his consistency analysis frustrates meaningful judicial review and constitutes a legal error."), *report and recommendation adopted*, No. 20-cv-02132-AJB-MSB, 2022 WL 62908 (S.D. Cal. Jan. 6, 2022); *see also Freddy D. v. Kijakazi*, No. EDCV 22-1873-KK, 2023 WL 12167476, at *6 (C.D. Cal. Nov. 2, 2023) (collecting cases indicating that "district courts have continued to find that the ALJ errs when he rejects a medical opinion without specific explanation of how he considered the supportability and consistency factors").

**c. Commissioner's Argument**

The Commissioner argues that Dr. Kim's findings were not limitations, but rather "suggestion[s]" that the ALJ did not need to consider in formulating the RFC. Def. Br. at 8; *see Valentine v. Comm'r SSA*, 574 F.3d 685, 691-692 (2009) (finding that ALJ did *not* err by excluding a doctor's "observation" from the RFC because it was a "recommended way for [plaintiff] to cope with his PTSD symptoms," as opposed to a "diagnosis" or "statement of [plaintiff's] functional capacity"). The Court disagrees. These statements appear at the end of the report under the header "MEDICAL SOURCE STATEMENT," and reflect Dr. Kim's medical opinions. 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in . . . [y]our ability to perform mental demands of work activities[.]"); *see also* Soc. Sec. Admin., *Consultative Examinations: A Guide for Health Professionals*, https://www.ssa.gov/disability/professionals/greenbook/ce-evidence.htm [https://perma.cc/DMQ8-T9AA] (describing a statement by a consultative examiner "*providing an opinion* about what the claimant can do despite his or her impairment(s) based on the medical source's findings") (emphasis added).

Dr. Kim's report sets forth her opinions as to Plaintiff's limitations and related restrictions in a two-column table with the left column describing different mental health functional areas and

the right column containing corresponding statements regarding Plaintiff's limitations and functional capacity. AR 1034. For both of Plaintiff's moderate limitations, the only restriction provided by Dr. Kim is the likely need for assistance and support. Because these statements reflect Dr. Kim's conclusions as to Plaintiff's limitations, the ALJ erred in failing to consider them in constructing the RFC.[8]

* * *

In sum, the ALJ did not err in analyzing Dr. Chandler's opinion but erred by not considering the limitations set forth by Dr. Kim – either by incorporating them in full or in part or by explaining why they should not be included. This error was harmful because the inclusion of these additional limitations in the RFC may have resulted in a finding of disability. *Valentine*, 574 F.3d at 690 ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013) ("The ALJ provided no reasons for disregarding aspects of [the doctor's] opinion, so we must reverse.").

**B. Subjective Testimony**

Plaintiff argues that the ALJ erred in rejecting her testimony regarding her "alleged absenteeism and/or ability to maintain regular attendance" as "simply not supported by and . . . inconsistent with the documented medical evidence of record."[9] Pl. Br. at 19 (citing AR 366). At

---

[8] The Commissioner further contends that, when Dr. Kim found that Plaintiff "likely" requires some assistance and support, she used "equivocal" language and, as a result, "the ALJ reasonably declined to include limitations in the RFC for support or assistance." Def. Br. at 8. At hearing, in support of this argument, the Commissioner referenced cases not cited in the briefing, except one, *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996 (9th Cir. 2015). But in *Rounds* and the other cases cited by the Commissioner, the courts did not consider whether the doctor's language was equivocal, instead focusing on whether the ALJ reasonably declined to include non-imperative recommendations, as opposed to diagnoses or statements of functionality, in the RFC. *See, e.g.*, *id.* at 1005-1006; *Putz v. Bisignano*, No. 24-5403, 2025 WL 3012797, at *1 (9th Cir. Oct. 28, 2025). Because the Court concludes that Dr. Kim's findings were statements of functionality that the ALJ should have accounted for in – or provided reasons for excluding from – the RFC, these cases do not mandate a different result. *Cf. Kakos v. Astrue*, 464 F. App'x 598, 599 (9th Cir. 2011) ("When the evidence in the record is vague or ambiguous, the ALJ has a duty to develop the record to resolve the ambiguity." (citing *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011))).

[9] Plaintiff also argues that the "ALJ also failed to account for the impact fatigue would have on absenteeism, despite correctly noting that such fatigue was 'significant' in the record." Pl. Br. at 19-20 (quoting AR 349). The Court does not address this argument because it finds that the ALJ erred for other reasons. However, the ALJ should still consider the impact of Plaintiff's fatigue when reformulating the RFC on remand.

the May 2021 ALJ hearing, Plaintiff testified that she was "fired from most of [her] recent jobs" due to "depressive episodes." AR 59. She also testified that she would "call[] out of work" when she had an episode. AR 59. According to Plaintiff's testimony, during an episode, she would wake up feeling a sense of dread and have no energy to get out of bed, brush her teeth, or shower. AR 59 (testifying that she "can barely get out of bed to use the restroom"). Plaintiff further testified that these episodes "used to be short" but "they're lasting longer." AR 60. Subsequently, at the February 2025 ALJ hearing, Plaintiff testified that she attended a cosmetology course in 2022, which she was unable to complete because she failed the final examination due to her inability to retain information. AR 405. Plaintiff also testified that she missed three classes during the three-month course and noted that she was placed in a performance improvement program as a result. AR 405. In addition, when asked how often she leaves her house, Plaintiff testified that she left "as needed" and if she did not "need anything, then [she] did not leave the house." AR 406-407 (noting she only left the house three times in the past week).

The ALJ may only reject the plaintiff's testimony "if she gives specific, clear and convincing reasons for the rejection."[10] *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation modified); *see also Burrell*, 775 F.3d at 1136. "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (citation modified). In making an adverse credibility determination, the ALJ cannot rely on general findings, but must instead "specifically identify what testimony is credible and what evidence undermines the [plaintiff's] complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation modified); *see also Brown-Hunter*, 806 F.3d at 494 ("[P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the [plaintiff's] symptom testimony is not credible.").

[10] Absent a finding of malingering, the "specific, clear, and convincing reasons" standard applies because the ALJ found that Plaintiff has presented "objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)); *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); AR 359.

The Court finds that the ALJ erred in rejecting Plaintiff's testimony related to absenteeism. As an initial matter, other than the testimony concerning leaving her home, the ALJ did not identify the specific portions of Plaintiff's testimony regarding her absenteeism that should be discredited before providing reasons for discrediting such testimony. *See* AR 359, 365-369. Therefore, the ALJ erred. *Brown-Hunter*, 806 F.3d at 489. In addition, the ALJ erred by finding that Plaintiff's testimony regarding her absenteeism was inconsistent with, and not supported by, the medical evidence, for the reasons discussed below.

*First*, the ALJ failed to differentiate between different time periods in discounting Plaintiff's testimony. The period of alleged disability at issue spans from the alleged onset date in 2019 to the date of the ALJ's decision in 2025. When discounting Plaintiff's testimony, the ALJ underscored that Plaintiff's symptoms were "controlled and stable with medications," that she had transitioned to a "*lower level of care* due to reduction in symptoms," and that she requested to discontinue or decrease her medications in December 2022 and January 2023. AR 367-368. The ALJ similarly stressed that, "during the second half of 2024," Plaintiff "continued to report doing well, with a positive response to therapy," and she was able to manage the one "small depressive episode" she had.[11] AR 369. The ALJ heavily relied on medical records from late-2022 to the end of 2024, to discount Plaintiff's prior testimony regarding her absenteeism.[12] AR 367-369 (citing AR 1279, 1291, 1299, 1314, 1320, 1329, 1348, 1365, 1377, 1484, 1491, 1502). By doing so, the ALJ did not properly consider medical evidence from earlier, which tends to support Plaintiff's testimony. *See, e.g.,* AR 7, 308-311, 319-321, 804-805, 889-892, 1229-1230, 1237-1240. This was error. *See Smith v. Kijakazi*, 14 F.4th 1108, 1113-1114 (9th Cir. 2021) (explaining that the

---

[11] The ALJ also explained that two letters Plaintiff submitted were irrelevant because they were from before Plaintiff's alleged onset date, December 1, 2019. AR 365. These letters were from former employers and demonstrated unsuccessful work attempts, prior to the onset date. AR 782-784 (including letter dated December 4, 2018, less than one year before the alleged onset date, reflecting failed work attempt). Failed work attempts leading up to the alleged onset date tend to support, rather than detract from, Plaintiff's testimony regarding her absenteeism and the episodic nature of her mental impairments.

[12] The ALJ's citations to earlier medical records were to either mental status examinations or records supporting the ALJ's finding that Plaintiff's treatment was routine and conservative, both of which are discussed further below.

ALJ "erred by disregarding *all* of [plaintiff's] testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only" supported by medical evidence from a later-period).[13]

*Second*, the ALJ and the Commissioner repeatedly point to Plaintiff's mental status examinations ("MSEs"), which were consistently "unremarkable," in support of discounting the absenteeism testimony. Def. Br. at 10-13; AR 366-367, 369. The Ninth Circuit, however, has explained that "treatment records must be viewed in light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (collecting cases). In this case, although Plaintiff generally had "unremarkable" MSEs in 2020 and 2021, corresponding treatment notes indicate that Plaintiff reported feeling worse on multiple occasions and that her "depression and anxiety continue[d] to keep her from maintaining employment." *See, e.g.*, AR 318-321, 889-890, 892. In February 2022, Plaintiff was hospitalized and placed on a 5150 hold, when she went to a behavioral urgent care clinic with symptoms of hearing voices that were telling her to drive off a ravine. AR 7. Soon after, Plaintiff had "symptoms of depressed mood, struggling to engage in a variety of activities, fatigue, oversleeping, disrupted sleep, low self-esteem, poor concentration, anxious worry, and history of suicidal ideation [that] seem to stem from various traumas and stressors she experienced throughout her life[.]" AR 797, 804-805 (March 15, 2022 comprehensive assessment, noting that Plaintiff's "depressive symptoms make it difficult for her get out of bed and engage in her activities of daily living, including working or eating").

Overall, the record indicates that – despite largely consistent "unremarkable" MSEs – Plaintiff did not experience significant improvement in her mental health conditions until around mid-2023. *See, e.g.*, AR 1239-1242, 1245-1246, 1251-1256, 1269-1272, 1277-1278, 1282-1283, 1294-1297, 1305-1306, 1316-1319; 1356-1357. In light of the medical records, even if the MSEs "fail to support her testimony, they are legally insufficient on their own to discount Plaintiff's

[13] While in *Smith* the Ninth Circuit found the inconsistencies in the medical record supported rejecting the later-period testimony, 14 F.4th at 1114, that is not the case here where the Court is unable to discern the specific date through which the medical evidence supports Plaintiff's absenteeism testimony, *see infra* Section III.C.

testimony."[14] *Kimberly M. v. Comm'r, Soc. Sec. Admin.*, No. 23-cv-00087-HZ, 2024 WL 139941, at *8 (D. Or. Jan. 12, 2024).

*Third*, the ALJ purported to outline Plaintiff's history of mental health treatment, noting that her treatment has been routine, conservative, unremarkable, and effective. AR 366-367, 369. The Court disagrees. Plaintiff was prescribed and was taking the following psychiatric medications for her depression and anxiety: Wellbutrin; Lexapro; Lorazepam; and Hydroxyzine. *See, e.g.*, AR 1314-1315, 1410-1411, 1420-1421. "Courts within the Ninth Circuit have repeatedly held that taking psychiatric medications, including antipsychotics and antidepressants such as the medications taken by Plaintiff, is not considered conservative treatment." *Wyatt A. v. O'Malley*, No. 24-cv-00712-SK, 2024 WL 5162651, at *3 (N.D. Cal. Dec. 17, 2024) (collecting cases); *see also Drawn v. Berryhill*, 728 Fed. App'x. 637, 642 (9th Cir. 2018) ("[T]he ALJ improperly characterized [plaintiff's] treatment as 'limited and conservative' given that she was prescribed a number of psychiatric medications."). Likewise, the ALJ did not identify any more aggressive treatment options that Plaintiff declined and "the record does not reflect that more aggressive treatment options [we]re appropriate or available." *Lapeirre-Gutt v. Astrue,* 382 Fed. App'x. 662, 664 (9th Cir. 2010). Thus, the ALJ's conclusion is not supported by substantial evidence.

Finally, the ALJ mischaracterized the only part of Plaintiff's testimony regarding her absenteeism that the ALJ explicitly identified. The ALJ stated that Plaintiff "testified that she does not leave the house often but otherwise has no problems leaving the house as needed." AR 359. But Plaintiff testified that she left the house "as needed" and if she did not "need anything, then [she] did not leave the house." AR 406-407; *see also* AR 719-720 (2023 functional report stating that Plaintiff does not "go anywhere on a regular basis" and, although she "may walk for 15 minutes on a good day," she otherwise does "not leave [her] house"). She did not testify that she had "no problems" leaving the house, as the ALJ suggested.[15]

[14] This is particularly true here, where the ALJ failed to distinguish between the medical evidence from different time periods that supports or detracts from Plaintiff's testimony.

[15] Similarly, the ALJ's characterization that Plaintiff's failed work attempts since her alleged onset

United States District Court
Northern District of California

* * *

As outlined above, the ALJ did not provide specific, clear, and convincing reasons for discounting Plaintiff's absenteeism and ability to maintain regular attendance testimony. This error was harmful. If her testimony had been properly credited and her absenteeism incorporated into the RFC, it would have required a finding of disability at least through 2021.[16] AR 67, 409, 410-411 (vocational expert testimony at the May 2021 and February 2025 hearings that, if Plaintiff were to miss more than one day of work per month, she would be unemployable).

### C. Remand

Plaintiff argues that the case should be remanded for an immediate award of benefits based on the improper rejection of her absenteeism testimony. Pl. Br. at 25; Pl. Reply Br. at 10, ECF No. 18. "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2018). The Court may remand for an immediate award of benefits only where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* at 1045. The Court must also determine, based on the record as a whole, that there is no "serious doubt that [the] claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. When these elements are satisfied, the Court "retain[s] 'flexibility' in determining the appropriate remedy." *Brown-Hunter*, 806 F.3d at 495 (citation omitted).

These requirements are satisfied for at least a portion of the Plaintiff's claimed disability period – from the alleged onset date through 2021. First, the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's subjective testimony from May 2021. *See supra*

---

date were caused by the required exertion and skill level of those jobs rather than her mental impairments appears to be based on conjecture and speculation. AR 366 ("Her unsuccessful attempts to perform these jobs does not cause the undersigned to believe that the claimant would not be able to perform other work[.]").

[16] Plaintiff also asserts that the ALJ erred by failing to consider her symptom statements in the records that are consistent with her absenteeism testimony. Pl. Br. at 19 (citing AR 49-51, 55, 59, 63, 271, 275, 308-309, 715). The ALJ is instructed to consider these statements on remand.

United States District Court
Northern District of California

Section III.B. Second, there are no outstanding issues that must be resolved in terms of developing the medical record. The Commissioner developed the record at multiple administrative hearings. Third, the record shows that Plaintiff would be found disabled through 2021, if her absenteeism testimony from the 2021 hearing was credited as true. *See* AR 59-60 (testimony concerning missing work due to depression, which resulted in job termination), 890-892 (treatment notes from August, November, and December 2021 indicating Plaintiff's "depression and anxiety continue to keep her from maintaining employment"); *see also* AR 67, 409 (vocational experts at both hearings testifying that if a claimant missed two or more days of work per month, she would be unemployable). Accepting Plaintiff's testimony from the 2021 hearing, including regarding the severity of her symptoms and that she was fired due to her absences, there can be no serious doubt Plaintiff was disabled through at least 2021.[17]

When these elements are satisfied, the Court may consider how long the claimant has waited to receive benefits. *See Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017). Plaintiff first sought benefits nearly seven years ago. AR 167. This delay further counsels in favor of remanding for an award of benefits. *See Trevizo*, 871 F.3d at 683 (finding that a delay of more than seven years since claimant first sought benefits counseled strongly in favor of remand for immediate payment of benefits).

Even though all the requirements for crediting as true and awarding benefits are met from the onset date through at least 2021, the Court is unable to discern whether Plaintiff remains disabled or, if not, whether a closed period of disability is more appropriate. The record contains significant evidence that supports Plaintiff's argument that her mental impairments are cyclical and episodic in nature, and that her disability continued through 2022 and beyond. *See, e.g.*,

---

[17] The Commissioner argues that "there are numerous conflicts that raise serious doubts about Plaintiff's alleged disability," which prevent the Court from applying the credit-as-true doctrine. But the Commissioner only provides one purported example: "the functional assessments of eight doctors, all of whom [allegedly] found that Plaintiff was not as limited as she claimed." Def. Br. at 16. "[A]t no point does the ALJ explain that [s]he is finding Plaintiff's testimony not credible because the medical opinion evidence is inconsistent with Plaintiff's subjective testimony." *Rosel A. v. Saul*, No. 20CV1098-MSB, 2021 WL 2588156, at *7 (S.D. Cal. June 23, 2021) (rejecting similar argument). Because courts "are constrained to review the reasons the ALJ asserts[,]" this argument fails. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

United States District Court
Northern District of California

AR 1239-1242, 1245-1246, 1251-1256, 1269-1272, 1277-1278, 1282-1283, 1294-1297, 1305-1306, 1316-1319; 1356-1357. But because the Court is unable to determine if or when her disability ended, the Court must remand for this determination. *Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) (finding remand for further proceedings appropriate where "the timing and duration of [plaintiff's] disability" needed to be determined if Plaintiff was found disabled); *see also Phillips v. Colvin*, No. 15-cv-01603-KI, 2016 WL 6666799, at *10 (D. Or. Nov. 9, 2016) (remanding because, "while it is clear [plaintiff's] mental impairments caused her to become disabled at some point prior to her date last insured, it is not clear . . . that she is entitled to ongoing disability benefits; rather, benefits for a 'closed' period of disability may be more appropriate").

On remand, the ALJ must credit Plaintiff's testimony as true and find Plaintiff is disabled from her alleged onset date through at least 2021. The ALJ must then determine whether the medical evidence supports finding Plaintiff has an ongoing disability or if a closed period is appropriate (and if so, the end date for that closed period). In doing so, the ALJ shall credit Plaintiff's testimony from both the 2021 and 2025 hearings. This includes Plaintiff's testimony regarding her inability to maintain class attendance in 2022. The ALJ shall incorporate Dr. Kim's finding that Plaintiff likely needs assistance and support in persistence and adaptability.[18] The ALJ shall revisit her step three analysis as to Listings 12.04 and 12.06,[19] and reformulate the RFC to include any additional limitations that are required. In doing so, the ALJ should be mindful of the Court's previous admonishments, particularly regarding the cyclical and episodic nature of Plaintiff's symptoms. *Stephanie E.*, 2024 WL 1244474, at *4; *see also Garrison*, 759 F.3d at

---

[18] The ALJ must "translat[e] and incorporate[e] [all] clinical findings into a succinct RFC," *Rounds*, 807 F.3d at 1006, or "explain why the ALJ chose not to accept them," *Megrditchian v. O'Malley*, No. 23-cv-01734-H-DEB, 2024 WL 4122458, at *5 (S.D. Cal. Sep. 9, 2024) (collecting cases); *see also Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580, 580 (9th Cir. 2012) ("The [ALJ] erred when formulating [plaintiff's] [RFC] because the RFC neither incorporated Dr. Steiner's opinion of [plaintiff's] work limitations nor gave specific and legitimate reasons for rejecting it.").

[19] *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.00B(3), 12.00B(5). When revisiting the step three analysis, the ALJ should consider section 12.00G of the listing of impairments. *Id.* § 12.00G (explaining how the Commissioner uses paragraph C criteria to evaluate a claimant's mental health disorder).

1017 ("Reports of 'improvement' in the context of mental health issues must be . . . interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

**IV. DISPOSITION**

For the foregoing reasons, the Court finds that the ALJ erred by not incorporating Dr. Kim's finding regarding the likely need for assistance and support to account for moderate limitations in concentration, persistence, and pace, and adaptability. Likewise, the ALJ erred in rejecting Plaintiff's subjective testimony regarding her absenteeism. These errors were harmful and require reversal of the ALJ's decision. On remand, the ALJ shall credit Plaintiff's absenteeism testimony as true and determine whether Plaintiff is entitled to ongoing disability benefits. If the ALJ finds a closed period is appropriate, the ALJ shall determine the appropriate end date based on the medical record. In making these determinations, the ALJ shall follow the instructions set forth in this Order. Judgment will be entered.

**IT IS SO ORDERED.**

Dated: September 15, 2026

Eumi K. Lee
United States District Judge

United States District Court
Northern District of California